## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| JOANNE R. LONG, | * | Chapter 13 |
| Debtor | * | Case No.: 1-15-bk-02415-MDF |
| | * | |
| VALERIE A. JENSEN-GIBSON, | * | Chapter 13 |
| Debtor | * | Case No.: 1-15-bk-02486-MDF |
| | * | |
| BARBARA A. SHOTZBERGER and | * | Chapter 13 |
| JOHN E. SHOTZBERGER, | * | Case No.: 1-15-bk-02675-MDF |
| Debtors | * | |
| | * | |
| TINA MAY BOONE, | * | Chapter 13 |
| Debtor | * | Case No.: 1-15-bk-04854-MDF |

## OPINION

A hearing on confirmation was set on the Chapter 13 plan filed in each of the above

cases. In each case either Charles J. DeHart, III, the Chapter 13 trustee (the "Trustee"), filed an

objection to counsel's request for attorneys' fees, or I raised an issue regarding the fees at the

confirmation hearing. The fee requests were challenged because the amounts proposed to be paid

through each plan conflicted with the attorney's Disclosure of Compensation ("2016(b)

Statement"), Local Bankruptcy Form ("L.B.F.") 2016-2(a), the Rights and Responsibilities

Agreement (the "R & R Agreement"), or both. The plan was confirmed in each case, but I

reserved ruling on the fee request.

Local Bankruptcy Rule ("L.B.R.") 2016-2 (the "Rule") was adopted in September 2014,

and it became effective for Chapter 13 cases filed on or after October 1, 2014. The Rule governs

requests for the payment of compensation by debtors' attorneys in Chapter 13 cases.

In the course of hearing numerous objections to fee applications after the Rule was

adopted, I became aware that attorneys were not applying the Rule as intended. Accordingly, in

addition to ruling on the fee request in each case, this Opinion is rendered to clarify the requirements of L.B.R. 2016-2.[1]

## I. Background

### A.    History of "no-look fees" in the Middle District of Pennsylvania

Before the adoption of the Rule, there was no specific provision in the local bankruptcy rules governing the compensation of debtors' attorneys in Chapter 13 cases. When a professional sought compensation from a debtor's estate, an application was required under the general provisions of L.B.R. 2016-1. Despite the requirements of the local rule, a practice developed whereby the Trustee would not object to a request for the payment of fees through a Chapter 13 plan if it did not exceed a certain amount, adjusted periodically by the Trustee. The trustee-imposed fee limit was referred to as a "no-look fee." The Court gave tacit approval to this procedure, which simplified the fee review process in Chapter 13 cases.

By 2012, I had concluded that the nature and extent of services being provided for the same fee amount varied widely among practitioners appearing before me. Concerned about the growing disparity in services being offered for the no-look fee, the Court established a fee committee to study the matter and to make recommendations. After spending approximately one year evaluating the local rules and standing orders of other bankruptcy courts and analyzing current local practices, the committee proposed a new rule specifically addressing the compensation of debtors' attorneys in Chapter 13 cases, which, with some amendments, was

---

[1]The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This is a core, non-*Stern* proceeding under 28 U.S.C. § 157(b)(2)(A). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure (Fed. R. Bankr. P.") 7052.

adopted in the Rule.

The comment to the Rule explains its purpose as follows:

L.B.R. 2016-2 is being adopted as of September 1, 2014, to provide for specific procedures for the approval of attorneys' fees in chapter 13 cases. The new rule will apply to chapter 13 cases which are filed on or after October 1, 2014. The general rule will be applicable to attorneys who have agreed to provide services using the lodestar approach. A fee application form is adopted as L.B.F. 2016-2(b). To provide a more efficient means of approving fees in chapter 13 cases, a presumptively reasonable fee is being adopted; this will enable attorneys to obtain approval for fees in certain amounts without filing a fee application. The rule also adopts a Rights and Responsibilities Agreement form to be completed by all represented debtor(s) and their attorneys. The Agreement specifies the services an attorney will perform, if required under the circumstances of a particular case, as well as the responsibilities of the debtor(s) to assist in the prosecution of the case. The Agreement also will specify the compensation arrangements agreed to by the debtor(s) and the attorney. The rule also provides for a Request for Payment of Chapter 13 Compensation and Expenses to be filed prior to confirmation to allow the chapter 13 trustee to determine the amount of fees that will be paid through the plan. The rule also provides that when a case is converted or dismissed and the chapter 13 trustee is required to return payments made to the debtor(s), counsel may request the payment of outstanding attorneys' fees.

A presumptively reasonable fee ("PRF"), which is actually a range of fees, was adopted as an alternative to the traditional lodestar approach. Unlike the old no-look fee, to take advantage of the streamlined approval process, an attorney is required to perform all ordinary and customary services through confirmation of the plan. Concomitantly, the Court adopted the R & R Agreement so a debtor would know at the beginning of the case whether the attorney was requesting a specific flat fee for services through confirmation or billing on an hourly basis. The R & R Agreement was adopted not only to clarify the responsibilities owed by an attorney to his client, but also to explain the client's obligation to cooperate with the attorney.

Neither the use of a presumptively reasonable fee nor the adoption of a rights and responsibilities agreement are unique to this Court. During the process of drafting the Rule, the

3

fee committee adapted forms developed and used successfully in other jurisdictions. *See, e.g.,*

*Rights and Responsibilities of Chapter 13 Debtors and Their Attorneys*, EDC 3-096 (Bankr. E.D.

Cal.); *Chapter 13 Agreement Between Debtor and Counsel, Rights and Responsibilities of*

*Chapter 13 Debtors and Their Attorneys*, Local Form 8 (Bankr. D. Mass.); *Declaration of Rights*

*and Responsibilities of Chapter 13 Debtors and Their Attorneys*, Local Form for Toledo and

Canton Divisions (Bankr. N.D. Ohio); Minn. Local Rule 2016-1(d) (providing for simplified

application process for flat fees in Chapter 13 cases); Mont. Local Rule 2016-1(b) (providing for

a "presumed" reasonable fee in Chapter 13 cases if the attorney uses a specified retention

agreement and the plan is confirmed); *In re Debtor's Attorney Fee in Chapter 13 Cases*, 374

B.R. 903 (Bankr. M.D. Fla., Tampa Div., 2007); W.D. Pa. Local Rule 2016-1 (providing for a

"no look attorney fee" in Chapter 13 cases); E.D. Pa. Local Rule 2016-2 (providing for a short

form application process for attorneys receiving certain flat fees for services).

Under section (a) of the Rule, if a debtor is represented by an attorney, both parties must

execute the R & R Agreement. If the R & R Agreement provides for the payment of the PRF, an

attorney is not required to file the fee application otherwise required under section (b). Rather,

the attorney may submit an abbreviated request for payment. The Rule specifically provides that

"[w]hen an attorney agrees to accept a presumptively reasonable fee, all covered legal services

rendered by the attorney through confirmation of the plan, must be included in the fee" unless the

attorney can demonstrate to the court that the services exceed the "normal and customary

services in a chapter 13 case . . . ." L.B.R. 2016-2(c), (e).

The R & R Agreement sets out these alternative compensation arrangements, as does the

District's Model Chapter 13 Plan. *See* L.B.F. 3015-1. For services rendered through plan

4

confirmation, an attorney and his client may agree either to a fee calculated through a lodestar analysis or to the PRF, but not both. As the R & R Agreement clearly states, "'presumptive reasonable fees' are neither minimum nor maximum fees for Chapter 13 cases." L.B.F. 2016-2(a). They are fees for a specified set of services that the Court will presume are reasonable and for which the usual fee application process will be waived. Accordingly, using the PRF as a retainer against which time is billed violates the Rule.

The PRF is not a rigid, "one size fits all" fee. In a typical consumer case the PRF is $4000, but if the debtor is proposing a "conduit" plan, in which future mortgage payments are paid through the plan, an additional fee of $500 is presumed to be reasonable. L.B.R. 2016-2(c). If the debtor operates a business, the PRF is $5000. If an attorney agrees to be paid the applicable PRF for services through confirmation of the plan, he is not required to include in this fee post-confirmation services or services rendered in connection with adversary proceedings. He may apply for additional compensation for these services by submitting a fee application in compliance with L.B.R. 2016-2(b). In an extraordinary case, an attorney who has agreed to accept a PRF may request additional fees for services rendered before confirmation of the plan that are determined not to be normal or customary. L.B.R. 2016-2(e). Finally, use of the PRF is not required. An attorney is free to agree with his client that he will be compensated on the basis of time spent times an hourly rate.

Regardless of the method of compensation, any attorney seeking payments through the plan as an administrative expense must complete L.B.F. 2016-2(c), a Request for Payment of Chapter 13 Compensation and Expenses, categorizing fees being sought as presumptively reasonable fees or fees approved by court order. L.B.R. 2016-2(g).

B.    *Fee agreements challenged by the Trustee*

1.    *Joanne R. Long*

On June 5, 2015, Sara A. Austin ("Austin") filed a Chapter 13 bankruptcy petition on behalf of Joanne R. Long ("Long"). In the 2016(b) Statement, Austin certified that she had agreed to accept $1500 "for services rendered or to be rendered on behalf of the debtor in contemplation of or in connection with the bankruptcy case." She further certified that in return for the $1500 fee, she had "agreed to render legal service for all aspects of the bankruptcy case" including: "[a]nalysis of the debtor's financial situation" and advising the debtor in determining whether to file a bankruptcy petition; "[p]reparation and filing of any petition, schedules, statement of affairs and plan which may be required; [r]epresentation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof"; and "[r]epresentation of the debtor in adversary proceedings and other contested bankruptcy matters." Austin left blank the area on the form describing excluded services.

Long and Austin executed an R & R Agreement representing that "[i]n this case, the parties agree that the legal fees for services to be provided through the confirmation of a plan, excluding adversary proceedings will be . . . $1500." On June 30, 2016, Austin filed a Chapter 13 plan that provided that she had obtained a retainer of $300 and that $1200, the balance of the PRF, would be paid through the plan. When the Trustee objected to the plan on issues unrelated to attorneys' fees, Long agreed to file an amended plan. The amended plan provided that the balance due on attorney's fees was $1700, contrary to the agreement set forth in the R & R Agreement and in the 2016(b) Statement. After the Trustee objected, a further amended plan was filed on March 1, 2016. The Second Amended Plan stated that Austin was to receive $1700

6

through the plan as the "unpaid balance of the presumptively reasonable fee specified in L.B.R.

2016-2." At paragraph 8, the plan also contained the following provision: "the amount to be paid

to Debtor's counsel differs from that in the [2016(b)] Statement due to additional services being

rendered since the filing of the [2016(b)] Statement."

On April 1, 2016, Austin filed an Amended 2016(b) Statement, this time indicating that

Long had agreed to pay a $2000 flat fee in exchange for Austin's services in the bankruptcy case.

Nothing was filed on the docket to indicate that Long had executed an Amended R & R

Agreement to acknowledge the increased fee.

### 2. Valerie A. Jensen-Gibson

On or about May 11, 2015, Steven P. Miner ("Miner") and Valerie A. Jensen-Gibson

("Jensen-Gibson") executed an R & R Agreement in which Miner agreed to file a Chapter 13

bankruptcy petition on Jensen-Gibson's behalf. The R & R Agreement provided that "the parties

agree that the legal fees for services to be provided through the confirmation of a Plan, excluding

adversary proceedings will be $4000."

On June 9, 2015, Miner filed a Chapter 13 bankruptcy petition on behalf of Jensen-

Gibson. In the 2016(b) Statement filed in the case, Miner certified that he had agreed to accept

$4000 "for services rendered or to be rendered on behalf of the debtor in contemplation of or in

connection with the bankruptcy case." He further certified that in return for the $4000 fee, he

had "agreed to render legal service for all aspects of the bankruptcy case" including: "[a]nalysis

of the debtor's financial situation" and advising the debtor in determining whether to file a

bankruptcy petition; "[p]reparation and filing of any petition, schedules, statement of affairs and

Plan which may be required; [r]epresentation of the debtor at the meeting of creditors and

7

confirmation hearing, and any adjourned hearings thereof"; and "[r]epresentation of the debtor in adversary proceedings and other contested bankruptcy matters." Miner left blank the area on the form describing excluded services. In the plan filed on the same date, Miner stated that a retainer of $1525 had been paid and that the balance of the PRF of $2475 would be paid through the plan. The Trustee objected to the plan on grounds unrelated to Miner's fee, which was sustained.

On March 31, 2016, Miner filed an amended plan on Jensen-Gibson's behalf. The plan provided that the Trustee would distribute $6707.50 in fees, an amount that was stated to represent the "unpaid balance of the presumptively reasonable fee specified in L.B.R. 2016-2." At the same time, Miner filed an application for the approval of compensation earned from the inception of the case calculated on a lodestar basis for services rendered by two attorneys and a paralegal in Miner's law firm. The application stated that the fees were to be paid by the Trustee "pursuant to the Plan confirmed in this case." The Trustee objected to the application because it conflicted with the 2016(b) Statement and the provision in the original plan.

### 3. Barbara A. Shotzberger and John E. Shotzberger

On June 5, 2015, Donald M. Hahn ("Hahn") and Barbara A. Shotzberger and John E. Shotzberger ("the Shotzbergers") executed an R & R Agreement which contained a provision stating that they agreed to pay Hahn an initial retainer of $1810 and $2500 through plan payments. It further stated that "[a]ttorney intends to file an application for payment of any additional balance through the Trustee."

On June 23, 2015, Hahn filed a Chapter 13 petition on behalf of the Shotzbergers. In the 2016(b) Statement, he certified that he had agreed to accept $4000 "for services rendered or to be rendered on behalf of the debtor[s] in contemplation of or in connection with the bankruptcy

8

case." He further certified that in return for the $4000 fee, he had "agreed to render legal service for all aspects of the bankruptcy case" including: "[a]nalysis of the debtor's financial situation" and advising the debtors in determining whether to file a bankruptcy petition; "[p]reparation and filing of any petition, schedules, statement of affairs and Plan which may be required; [r]epresentation of the debtor[s] at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof"; and "[r]epresentation of the debtor[s] in adversary proceedings and other contested bankruptcy matters." Hahn left blank the area on the form describing excluded services. At the bottom of the form, contradicting the information at the top, Hahn stated that "Debtors agreed to pay Attorney $175 per hour for legal services and to reimburse out-of-pocket expenses."

On July 8, 2015, Hahn filed the Shotzbergers' first Chapter 13 plan. The plan stated that Hahn had received a $1500 retainer and that the amounts of $2500 "plus additional amounts as approved by the Court after notice and opportunity for hearing would be paid." The Model Plan Form was modified, such that it did not indicate, as required on the form, whether Hahn was receiving compensation through a PRF or a lodestar. On January 5, 2016, Hahn filed an amended 2016(b) Statement indicating that he was not retained for a "flat rate" and that he had been employed on a lodestar basis at $175 per hour to perform all necessary services in the case. He filed a further amended 2016(b) Statement on May 11, 2016 indicating that his services were being provided on an hourly basis. On May 5, 2016, Hahn filed an application for compensation on an hourly basis in a total amount of $5775 and for reimbursement of expenses in the amount of $441.50.

9

On March 28, 2016, Hahn filed a Chapter 13 Plan on the Shotzbergers' behalf containing a provision that he was to be compensated on a lodestar basis at the rate of $175 per hour.

### 4. Tina May Boone

On November 15, 2015, Gary J. Imblum ("Imblum") filed a Chapter 13 bankruptcy petition on behalf of Tina May Boone ("Boone"). The 2016(b) Statement filed in the case contained the following provision:

> The presumptively reasonable fee is $4000.00. Debtor's counsel will keep a record of all time invested in this case by counsel and paralegals. If the total time invested, billed at applicable hourly rates, plus fees and costs, exceeds the minimum fee, then Debtor will be responsible for the amount exceeding the minimum fee.

On December 24, 2015, Imblum and Boone executed an R & R Agreement in which they agreed that the legal fees for services to be provided through the confirmation of a plan, excluding adversary proceedings, would be billed on a "per hour" basis.[2] The first plan in the case, filed on the same date, indicated that Boone had paid a $1077 retainer and that the balance of the PRF of $2923 would be paid through the plan. The plan provision, therefore, conflicted with the arrangement specified in the R & R Agreement.

On March 15, 2016, Imblum signed and filed L.B.F. 2016-2(c) reporting that his client had agreed to pay the $4000 PRF, that $1077 had been paid before filing and that the balance to be paid through the plan was $2923. When a first amended plan was filed on March 30, 2016, it contained the following provision:

> Attorney fees: Payable to Gary J. Imblum, Esquire. Total fees and costs in the amount of $4890.18 through March 23, 2016 less client payment in the amount of $1495.00 for a net amount due through the Trustee of $3395.18.

---

[2]The R & R Agreement fails to serve its intended purpose when, as in this case, debtor and counsel delay reviewing and signing the agreement until six weeks after filing the petition.

10

The plan provision further stated that all future fees would be billed at an hourly rate "for all services not included in the flat fees as defined in Fee Agreement between Debtor and counsel." On the same date, Imblum filed a fee application requesting approval of $4435.75 in fees and $454.43 as reimbursement of expenses.

## II. Discussion

In the cases outlined above, the attorney filed inconsistent documents describing the terms of the compensation agreement with the client. Therefore, it was unclear what disbursements the Trustee would be required to make in each case under a confirmed plan. Before resolving these discrepancies, it is important to explain why the fee approval process in bankruptcy cases should not be treated cavalierly by the Court or by attorneys who practice before it.

### A.  Attorney compensation under § 330 of the Bankruptcy Code

The compensation of debtors' attorneys in Chapter 13 cases is governed by 11 U.S.C. § 330(a)(4)(B), which allows the court to award "reasonable compensation" to counsel for "representing the interest of the debtor in connection with the bankruptcy case."  11 U.S.C. § 330(a)(4)(B).  Reasonable compensation is to be determined by taking into account certain factors: the time spent; normal and customary rates charged; whether the services were necessary and beneficial; whether the services were performed within a reasonable amount of time under the circumstances; whether the attorney is board certified or particularly skilled; and whether the compensation is "reasonable based on the customary compensation charged by comparably skilled practitioners" in non-bankruptcy cases.  11 U.S.C. § 330(a)(3)(F). Bankruptcy courts have

Case 1:15-bk-02486-RNO    Doc 40    Filed 06/24/16    Entered 06/24/16 14:02:41    Desc
Main Document      Page 11 of 23

a duty to review fee applications, which arises from a court's inherent obligation to monitor the administration of a debtor's estate and to maintain the integrity of the bankruptcy system. *In re Busy Beaver Building Centers, Inc.*, 19 F.3d 833, 841 (3d Cir. 1994).

        B.        *The presumptively reasonable fee as an alternative to the lodestar calculation*

Reviewing requests for compensation under § 330(a)(3) typically requires a court to apply the lodestar calculation. While the lodestar method is the traditional approach, it is not mandated. *Busy Beaver*, 19 F.3d at 856 (holding that § 330 "by no means ossifies the lodestar approach as the point of departure in fee determinations"). The lodestar method "is nothing more than an attempt to assign a market rate." *Messner v. Commerce Bank/Harrisburg, N.A. (In re Smith)*, 331 B.R. 622, 628 (Bankr. M.D. Pa. 2005) (citations omitted).

In 2005, I observed that "the volume of Chapter 13 cases has risen sharply while the preparation of petitions and accompanying documents has become more routinized and automated." *In re Smith,* 331 B.R. at 629. "Even if one starts with the premise that each [C]hapter 13 case is unique, it is fair to say that a great number of [C]hapter 13 cases share common or typical elements." *In re Wesseldine*, 434 B.R. 31, 38 (Bankr. N.D.N.Y. 2010) (citing *In re Dabney,* 417 B.R. 826, 834 (Bankr. N.D. Ga. 2009)). As the number of Chapter 13 cases has risen, bankruptcy courts have increasingly adopted presumptively reasonable or flat fees for services rendered by debtors' attorneys in Chapter 13 cases. *See* Bruce M. Price, *"No Look" Attorneys' Fees and the Attorneys Who Are Looking: an Empirical Analysis of Presumptively Approved Attorneys' Fees in Ch. 13 Bankruptcies and a Proposal for Reform,* 20 Am. Bankr. Inst. L. Rev. 291, 317-21 (Spring, 2012) (the author identifies ninety courts with a fixed no-look fee as of 2011). In the results of the mammoth consumer bankruptcy fee study conducted by Lois

R. Lupica between 2003 and 2009, Prof. Lupica observed that more than 50% of the attorneys surveyed charged a flat fee in Chapter 13 cases. Lois R. Lupica, *The Consumer Bankruptcy Fee Study: Final Report*, 20 Am. Bankr. Inst. L. Rev. 17, 111 (Spring 2012).

Flat or no-look fees have become increasingly popular because they simplify the compensation process in routine cases for both attorneys and the court. Extensive time devoted to maintaining time records and preparing fee applications can be avoided. Flat fees also encourage greater efficiency by the attorney. *Law Offices of David A. Boone v. Derham-Burk* (*In re Eliapo*), 468 F.3d 592, 599 (9th Cir. 2006). A flat fee is a disincentive to the performance of non-productive tasks. *In re Brent,* 458 B.R. 444 (Bankr. N.D. Ill. 2011). Consumers understand flat fees, and a cursory search of the internet suggests that they are an effective marketing tool for attorneys willing to use them. These types of fee arrangements are particularly appealing to clients experiencing financial difficulties. "Debtors should be able to find beyond the courthouse doors a level of certainty regarding their future financial obligations, including attorneys' fees." *In re Wesseldine*, 434 B.R. at 40.

The adoption of a no-look fee, however, creates new issues. What services are customary and necessary, and what is reasonable compensation for these services? Ideally, a presumptive fee is calculated by determining the services to be performed that are customary and necessary, the time required to complete those tasks by the average practitioner, and the reasonable rate charged for those services. *Id*. at 316.  If this calculation were easy, bankruptcy court flat fee provisions throughout the country would be uniform. However, they are not.

13

C.      *Use of presumptively reasonable fees in the Third Circuit*

Bankruptcy courts in the Third Circuit reflect the wide range of approaches adopted by courts nationally on the issue of Chapter 13 debtors' counsel fees. Delaware does not have a local rule addressing attorneys' fees in Chapter 13 cases. Judge Brendan Shannon, however, issued an order on August 27, 2012 establishing a $4000 "standard fee" for attorneys representing consumer debtors in Chapter 13 cases  and a $5000 "standard fee" for business cases. Attorneys charging the standard fee are obligated to represent the debtor until the case is closed. Judge Shannon's order delineates in great detail the types of services that must be provided to qualify for the standard fee.[3] For example, the guidelines include the defense of one motion to lift the automatic stay and one motion to dismiss a case as included in the standard fee. Further hearings are treated as being outside the standard fee. Certain evidentiary hearings in excess of thirty minutes also are not included in the standard fee.

In the Eastern District of Pennsylvania, Chapter 13 counsel may file a "short form application" for above median income debtors if they are charging $3500 or less and for below median debtors if they are charging no more than $3000. These flat fees cover services through plan confirmation. L.B.R. 2016-2 (E.D. Pa.)

In the Western District of Pennsylvania, debtors' counsel may avoid filing a fee application if they agree to charge a no-look fee of no more than $4000. Counsel may file an application requesting additional fees, but must remain as counsel of record until the case is closed or the attorney is permitted to withdraw by the court. L.B.R. 2016-1(f) (W.D. Pa.).

---

[3]*See* http://www.deb.uscourts.gov (Delaware Chapter 13 General Fee Order Dated 8.27.12)

14

The District of New Jersey authorizes the use of a flat fee of $3500 by a Chapter 13 debtor's attorney who agrees to perform certain specified services set forth in the rule. L.B.R. 2016-5 (D.N.J.).[4]

D.    *Using a rights and responsibilities form to define attorneys' services*

An attorney practicing in Pennsylvania is required to communicate the basic rate of the fee and other terms of compensation to the client in writing if the attorney has not previously represented the client on a regular basis. *In re Snyder*, 445 B.R. 431, 438-39 (Bankr. E.D. Pa. 2010) (citing Pa. R.P.C. 1.5(b)). A rights and responsibilities agreement is a further amplification of this duty. It not only lays out the duties of the attorney to his client, but also specifies the obligations of the client to the attorney. *Law Office of David A. Boone v. Derham-Burk (In re Eliapo),* 298 B.R. 392, n.15 (9th Cir. B.A.P. 2003) *rev'd in part on other grounds*; *In re Wesseldine*, 434 B.R. at 37; *In re Smith*, 331 B.R. at 629-30. When linked to a rights and responsibilities agreement mandated by the court, an agreement for a presumptively reasonable

_____

[4]The legal services required to earn the flat fee are:

"(A) meeting with the debtor to review the debtor's financial situation and discuss the bankruptcy process; (B) preparing, filing, and serving the debtor's petition, plan, schedules, and statement of financial affairs; (C) providing the chapter 13 trustee with all required documents including payment advices, redacted tax returns, real property valuations, and any other documents requested by the trustee; (D) representing the debtor at the meeting of creditors under § 341(a) of the Code and all confirmation hearings; (E) responding to routine objections to plan confirmation; (F) filing a statement of completion of a course concerning personal financial management as required under Bankruptcy Rule 1007(b)(7); (G) taking the steps necessary to discharge liens modified under the plan; and (H) providing such other legal services as necessary for the administration of the case, including telephone calls and correspondence.

L.B.R. 2016-5(A)(1) (D.N.J.)

fee becomes an agreement not only with the debtor but also with the court. "[I]n exchange for the attorney's commitment to perform specified legal services for the debtor, the court awards a flat fee and dispenses with the fee application." *In re Brent*, 458 B.R. at 450.

Whether they are looking to be paid a presumptive reasonable fee or a lodestar fee, bankruptcy attorneys who expect to be paid from the estate typically request retainers. A classic retainer, whereby an attorney receives a fee for his availability to perform services rather than for the services themselves, is uncommon in the bankruptcy context. A classic retainer is similar to a minimum fee in the sense that regardless of the work performed, title to the fee passes to the attorney once it is paid. Because a court has broad authority to review compensation arrangements between debtors and their attorneys, classic retainers are disfavored. *In re Matters Involving the Prof'l Conduct of Mazzei*, Misc. Pro. No. 14-00205-GLT, 2015 WL 4055475, *5 (Bankr. W.D. Pa. 2015). Instead, an attorney typically receives a retainer that is held in trust for the benefit of the debtor, which serves as security for the fees incurred by debtor's counsel. *In re Pannebaker Custom Cabinet Corp*, 198 B.R. 453, 459 (Bankr. M.D. Pa. 1996).

Alternatively, an attorney may contract for an advance fee retainer whereby the attorney receives a payment in advance for future legal services and applies bills incurred against the fund. The two types of retainers differ in that a security retainer remains property of the estate, and an advance fee retainer becomes the property of the attorney. *In re Renfrew Center of Fla, Inc.,* 195 B.R. 335, 338 (Bankr. E.D. Pa. 1996) *cited in Ryan v. Butera, Beausang, Cohen & Brennan,* 193 F.3d 210, n.11 (3d Cir. 1999). However, with an advanced fee retainer, the funds must be returned to the debtor if the contemplated services are not provided. *Id.* at 216 (citing *In re Gray's Run Tech., Inc.* 217 B.R. 48, 52-53 (Bankr. M.D. Pa. 1997)).The contract for services

16

executed by the debtor and the attorney determines how a retainer is classified, but the burden is on the attorney to establish the terms of the retainer. *In re Old Summit Mfg., LLC*, 323 B.R. 154, 162 (Bankr. M.D. Pa. 2004).

Whether a retainer is a classic retainer, a security retainer, or an advanced fee retainer, it is only part of the overall fee agreement. As I stated in *In re Smith* in 2005:

> Regardless of whether the court specifies which services are to be performed in order to earn the flat fee, there is an expectation that the amount of the fee will be sufficient to fairly compensate a competent attorney for rendering services routinely performed in a typical Chapter 13 case. The flat fee is not intended to serve as a retainer against which an attorney charges time expended until the retainer is exhausted, followed by an application for compensation for any remaining unpaid services.

*Id*. 331 B.R. at 630 *cited in In re Snyder*, 445 B.R. at 441. The intervening years have not altered my view on the distinction between a flat fee and a retainer.

*E.  Application of legal principles*

In each of the matters before me, the fee provisions in the documents filed in the case are confusing and misleading. When an attorney files ambiguous documents regarding the amount of fees to be paid as an administrative expense through a Chapter 13 plan, it impossible for a trustee to administer the plan, it confuses the client, and it defeats the purpose of a truncated fee approval process.

*1.  Joanne R. Long*

Long entered into a R & R Agreement with Austin on June 30, 2015, in which they agreed that Austin would perform certain services in the bankruptcy case in exchange for a fee of $1500.  On the same date, Austin filed her 2016(b) Statement indicating that Long had paid Austin $300 before the petition was filed, leaving a balance of $1200 due to be paid through the

17

Chapter 13 plan. The first plan proposed to pay the fees as set out in the 2016(b) Statement, but when an amended plan was filed, the fee was increased from $1500 to $2000 without explanation. After the Trustee objected, Austin filed an Amended 2016(b) Statement, indicating that the fee agreement had been revised and that Long had agreed to pay a $2000 flat fee, rather than the original $1500 fee.

The PRF in a typical consumer Chapter 13 case is $4000. At times, an attorney and her client agree to a lower fee. The objection to the fee provision in the amended plan in this case could have been avoided if Austin had filed a timely amended 2016(b) Statement. *See* Fed. R. Bankr. P. 2016(b) ("A supplemental statement shall be filed and transmitted to the United States Trustee within 14 days after any payment or *agreement* not previously disclosed.")

Having agreed to perform services through confirmation for a fee substantially below the $4000 PRF for a consumer case, I am reluctant to penalize her for failing to promptly amend the 2016(b) Statement. But to avoid spending unnecessary time justifying fees proposed in a plan that diverge from those disclosed in the 2016(b) Statement, counsel should insure that an amended Statement is filed before or with the plan incorporating the increased fee. Accordingly, the $2000 fee proposed in the confirmed plan is approved.

### 2. *Valerie Jensen-Gibson*

In Jensen-Gibson's case, Miner filed a 2016(b) Statement, a Chapter 13 plan, and L.B.F. 2016-2(c) on June 9, 2015 stating that he had agreed to accept $4000 for services rendered as a PRF and that $1525 had been paid pre-petition. Likewise, the R & R Agreement represented that "the legal fees for services to be provided through the confirmation of a Plan, excluding adversary proceedings will be $4000." Ten months later, however, Miner filed an amended

18

Chapter 13 plan stating that $1525 had been received as a retainer and that he was requesting additional fees of $6707.50. Further, Miner filed a fee application on the same date requesting fees on an hourly rate for services rendered from before the petition was filed to the date of confirmation.

In correspondence to the Court, Miner states that the increased amount of his fee is attributable to work that he performed to obtain a pre-confirmation loan modification for his client.[5] He further indicated that the modification was complicated by the death of the co-mortgagor when the modification was finalized. Miner relies on LBR 2016-2(e), which allows counsel to obtain additional fees beyond normal and customary services by separate application. L.B.R. 2016-2(e).

There are two problems with Miner's arguments on this issue. First, I disagree that a loan modification exceeds normal and customary services in a Chapter 13 case. They have become routine. In 2015, 109 motions for mortgage modification were filed in this District. Second, if the modification was extraordinarily complex, the alternative is not to subject all time spent to a lodestar analysis and ignore the original agreement for a PRF.

Accordingly, Miner's fee application in this case is not approved. Numerous documents filed in this case state that Miner agreed to accept a PRF for services, notwithstanding the affidavit of his client. To the extent Miner wishes to submit an application for compensation

---

[5]Miner also submitted an affidavit executed by Jensen-Gibson stating that "[i]t has been [her] understanding since the beginning of the representation, that [she] would be billed on an hourly basis." I accept this representation but note that it highlights the problem identified in this Opinion. It is difficult for a client to understand a fee arrangement if an attorney files documents, presumably reviewed by the client, that conflict with other representations made to the Court.

19

under L.B.R. 2016-2(e) for extraordinary services, excluding those covered by the PRF, he may

do so.

### 3. *Barbara A. Shotzberger and John E. Shotzberger*

In this case, Hahn and the Shotzbergers entered into an R & R Agreement, that while

rather oblique, suggests that Hahn was to be paid through a lodestar computation at $175 per

hour. The option for an hourly fee, rather than the PRF, was selected. However, the Statement

also contains language indicating that $2500 would be paid through the Chapter 13 plan in

addition to a "retainer" of $1810.[6] The 2016(b) Statement originally filed in the case is also

unclear. It states that Hahn had agreed to accept $4000 for legal services, that $1500 was paid

before filing, and that the balance due was $2500. But it also states that "Debtors agreed to pay

Attorney $175 per hour for legal services and to reimburse out-of-pocket expenses."

The Pennsylvania Rules of Professional Responsibility require an attorney to reach a clear

understanding of the fee arrangement with his client prior to undertaking the case. *See* Pa. R.P.C.

1.5(b). Further, it was inappropriate for Hahn to alter the Model Chapter 13 Plan to eliminate the

disclosure of which fee option was being selected – the PRF or the lodestar. Considering the

ambiguity, it would be appropriate for me to interpret the documents against the drafter of the

ambiguous language. *In re Snyder*, 445 B.R. at 438-39 (language of ambiguous 2016(b)

statement is to be construed against counsel and in favor of the debtor). The balance of the

evidence, however, supports Hahn's assertion that his agreement with his clients was for a

lodestar at $175 per hour. I note, however, that the haphazard, inartful drafting of the documents

---

[6]The Third Amended 2016(b) Statement filed by Hahn on May 11, 2016 indicates that he had received $1500 prior to the filing of the petition, not $1810. The record does not clarify which figure is accurate.

20

relating to Hahn's fees forced the Trustee and the Court to spend time reviewing the fee arrangements that could have been avoided if Hahn had exercised greater care. Therefore, Hahn's request for approval of compensation will be reduced by $200.

I also have made a substantive review of Hahn's fee application, and I note that time for travel to creditors' meetings was billed at his full rate. I have held previously that travel time billed at an attorney's full hourly rate is excessive. I will assume that actual time in the creditors' meeting was one hour and that the balance of three hours for each meeting was for travel. Therefore, a total of six hours of travel will be allowed at one-half Hahn's usual hourly rate and his compensation request will be further reduced by $525. Accordingly, Hahn's application is approved in the amount of $5050. Reimbursement of expenses of $441.50 is approved.

### 4. Tina May Boone

In the 2016(b) Statement he filed in this matter, Imblum characterizes the PRF as a minimum fee to be treated as a retainer until exhausted, after which the debtor will be billed on a lodestar basis. This language mirrors both the underlying fee agreement that was executed by Imblum and Boone as well as the R & R Agreement. As discussed above, however, this approach violates the Rule and conflicts with prior guidance issued by this Court. Thus, Imblum's practice of setting the PRF as a minimum fee is contrary to the intended purpose of a PRF and blurs the distinction between a PRF and a lodestar calculation.

As illustrated by this case, and others he has filed in this District, Imblum routinely agrees to perform services for an hourly rate, which he is permitted to do. He may not, however, attempt to characterize a fee subject to a lodestar calculation as a PRF. The standard R & R Agreement explains the PRF option. Not having opted to use the PRF, Imblum may not lead clients to

21

believe that they will incur fees equal to the PRF. To attempt to do so is misleading to his clients, who should understand that Imblum's fees in the case will be calculated by multiplying whatever time is spent on services that the Court determines is reasonable and necessary by the rate the Court determines is reasonable. Further, Imblum may not characterize the retainer as a minimum fee. To the extent that a retainer is not earned, regardless of whether the retainer is a security retainer or an advanced fee retainer, it is subject to disgorgement.

As to the within application, for failing to clearly set forth the basis upon which fees would be paid, Imblum's request is reduced by $200 and compensation is approved in the amount of $4235.75 through March 23, 2016. Reimbursement of expenses in the amount of $454.43 is approved.

### III. Conclusion

L.B.R. 2016-2 was adopted to provide a uniform procedure for an attorney to obtain fees in a routine Chapter 13 case without the necessity of filing a fee application. It also was adopted to provide greater transparency in the attorney/client relationship in Chapter 13 cases through the R & R Agreement. Debtors should not be solicited with the promise of a PRF if an attorney does not intend to perform services under those terms. Under the Rule, an attorney who agrees to perform services for a PRF is not "left in the lurch" when unexpected complications develop in a case. Neither is he required to perform services after confirmation or prosecute adversary proceedings without additional compensation. The Rule addresses these contingencies. Alternatively, an attorney may contract with a client on a lodestar basis if those terms are reflected in the parties' agreement. There are a several compensation options afforded to

22

attorneys under the Rule, but they must be defined clearly and any change must be disclosed promptly and fully.

   An appropriate Order approving fees as described above will be entered in each case.

**By the Court,**

Chief Bankruptcy Judge

Date:  June 24, 2016

23